## GRACE ROOT *versus* IRA YEOMANS *et al.*

A testator devised real and personal estate, in trust, that the use and improvement thereof should be applied to the maintenance of his three children, so long as they snould respectively live, and directed that " so long as each of his children should be industrious and economical, those so continuing should have and be entitled to the use and improvement, each, of one third of the real estate, and be entitled to all each should respectively raise by virtue of their improvement of the property." A suit in equity having been brought by one of the *cestui que trusts* against the trustee, for the purpose of obtaining possession of her portion of the real estate, evidence was introduced by the trustee, proving that for years previous to the decease of the testator and ever since, such *cestui que trust* was weak-minded and incompetent to manage the common concerns of life with ordinary prudence, but it did not appear, whether such infirmity was natural or induced by long habits of intemperance, in which she had indulged herself. It was *held*, that such evidence was admissible.

In the same case it appeared, that' the trustee had entered into possession of the real estate, and incurred expenses in improvements which were necessary to prevent the land from running out, that he had allowed the *cestui que trust*, annually, the interest of the sum at which the land was appraised at the death of the testator, and that the increase of the products had not been more than sufficient to compensate the trustee for such expenses. It was *held*, that the trustee was authorized so to occupy the estate, the rent allowed by him therefor being reasonable; that the *cestui que trust* was not entitled to the benefit of such improvements, until the expenses should be refunded to the trustee.

Where a trustee acts according to his best judgment, he is to be protected, although he may make some trifling mistakes in matters of doubt.

BILL in equity. The bill alleges, that Gad Root, on November 11, 1824, published his last will, whereir, after making several specific legacies, he devised to the respondents the

residue of his estate, real and personal, to be held by them in trust, that the use and improvement thereof should be applied for the comfortable support and maintenance of the testato1's three children, Grace, Asher, and Theodore, so long as they should respectively live ; that the testator therein further directed, that so long as each of his children should be industrious and economical, those so continuing should have and be entitled to the use and improvement, each, of one third of the real estate so given in trust as aforesaid, and be entitled to all each should respectively raise by virtue of their improvement of said property ; that the testator appointed the respondents executors of his will ; that he died in 1824 ; that the respondents accepted the respective trusts conferred upon them, and have always claimed and possessed, as trustees, all such residue of the estate ; that the complainant has been at all times since the execution of the will, industrious and economical, of which the respondents are well knowing ; yet, that they refuse to allow the complainant to take and enjoy the use and improvement of one third part of such real estate, but on the contrary have kept portions thereof in their own possession and have leased other portions to Ira Yeomans, one of the respondents, and others, at grossly inadequate rents, and have not permitted the complainant to lease the same at higher rents ; that they have not applied the use and improvement of the real or personal estate so devised to them in trust, to the comfortable maintenance of the complainant ; and that they refuse to render a true account of the personal estate of which they have become possessed as trustees, and of the income thereof, and of the real estate. Wherefore the complainant prays, that they may be required to set forth such an account, and that they may be directed to pay over to her such sums of money as she may be entitled to, by virtue of the will ; and that she may be hereafter permitted to take the use and improvements of one third part of the real estate.

In addition to the provisions stated in the bill, the will provided, that when each of the testator's three children, Grace, Asher, and Theodore, should die, the one third of the property so given in trust should be distributed, one half thereof to the children of his daughter Sophronia, and to their heirs,

Root
v.
Yeomans.

and the other half thereof, to the children of his daughter Elizabeth and her heirs ; and that, in case the property so given in trust should be insufficient for the comfortable support of either or all of the testator's children, as in case of sickness, so much thereof as should be necessary, should be sold and applied to that purpose.

The original bill was abated by the death of Eli B. Hamilton, one of the respondents ; but the suit was duly revived against Yeomans.

The answer alleges, among other things, that the real estate was, on or about March 14, 1825, divided into three equal portions, with the consent of the *cestui que trusts*, and that by virtue of this division, certain parcels thereof were assigned to the complainant and to the trustees for her use ; that the complainant has not been at any time, since the execution of the will, industrious or economical ; that at the death of the testator, the lands were unproductive and not in a state of good husbandry ; that when the real estate was divided the respondent, Yeomans, proposed to the complainant, that he would occupy the same himself, with the exception of the Plain lot, allowing her therefor, annually, the interest of the sums at which the parcels were appraised ; and that he stated that he would not take them for one or three years, but for a greater length of time, as he desired to improve them at great expense for the first years ; that she consented to this proposal ; that Yeomans accordingly, proceeded to improve such lands in the best manner in his power, and in order to make them permanently productive, incurred great expenses in such improvements, and has allowed to the complainant, annually, the amount of the interest upon their appraised value, which was more than the occupation of the same was worth, and more than could be procured by the respondent, Yeomans, from any other source or in any other mode.

The case was referred to a master in chancery. From his report, it appeared, that at the hearing before him, evidence was introduced on the part of the respondents, and admitted, which proved, that for years previous to the decease of the testator, and ever since, the complainant, as well as her brothers, had been weak-minded, and incompetent o manage

with ordinary prudence and discretion, the common concerns of life , that this weakness had been of long standing ; but that it did not appear, whether it was a natural infirmity or induced by the long habits of intemperance in which they had indulged themselves.

In regard to a portion of the lands belonging to the complainant, called the Hill lots, and which were improved by Yeomans, it appeared, by the report, that the improvements were necessary, and were judiciously made ; that they were required, to preserve the land and prevent it from running out ; that without the improvements the rents would have been very trifling ; and that the increased rents have not been more than sufficient to compensate Yeomans for the expenses incurred by him in relation to them.

In regard to a woodlot belonging to the complainant, the master reported, that it was proved, that from twenty to thirty cords of wood might have been annually cut therefrom, without rendering it less valuable than it was at tne death of the testator ; but that from the increased labor of cutting and select-.ng the decaying and old trees, the value of the wood would not exceed twenty-five cents a cord ; that the complainant contended, that if Yeomans had permitted her to take possession of her property, she would have obtained an annual income of about five dollars, from the use of the woodlot, and that as he had refused such permission, he ought to account with her for it, and that if he was justified in so refusing, he should have cut the wood himself and accounted with her for the proceeds ; that the respondent, Yeomans, contended, that the complainant was a mere tenant for life, and that though she might be entitled to her house-bote and fire-bote, if the wood were actually needed for such purposes, yet that she could not cut it for the purpose of sale or exchange, or to defray the expenses of her board.   The master was of opinion, that as it did not appear, that the situation of the complainant was such as to render the cutting of such wood necessary for her support, the trustee was not chargeable.

It also appeared from the report, that the personal property of the testator amounted to $1004·75, and that the real estate amounted to $4691·21 ; and that Yeomans had charged the

complainant the sum of $6·25, annually, for "care of estate and duties of trust;" which charge the master adjudged to be just and reasonable. It was also stated in the report, that the respondent, Yeomans, was the husband of the testator's daughter, Sophronia, who is mentioned in the will, and that he had purchased the reversion of one half of this residuary estate, the other half being devised to his children and their heirs. It did not appear, that the complainant ever kept house or had occasion for a fire for her own use ; but that she had lived at board.

The master having allowed the account of the rents and profits, stated by Yeomans, the complainant excepted to his report, for the following, among other reasons.

1. That the evidence tending to show want of capacity 'n the complainant was improperly admitted.

2. That the evidence as to the former intemperate habits of the complainant was improperly admitted. ·

3. That as Yeomans had no right to lease the estate to himself, and has never exhibited any account of his expenditures for any supposed repairs or improvements, the master should have reported, that he ought to be held liable for the annual produce of the land, without any allowance for any expenses for such repairs or improvements ; which the master has not done.

4. That the master ought to have reported, that the improvements on the Hill lots were made for the benefit of the reversioners, and should have disallowed any claim therefor ; which he has not done.

5. That the sum allowed by the master for the services of Yeomans, was unreasonable, against evidence, and ought not to be allowed.

6. That the complainant ought not to have been prohibited from cutting wood until her necessities required it, for her support, and that the master ought not to have reported, that she was rightfully forbidden.

Sept. 10th.    *Blair* and *Leonard*, for the complainant, as to the third and fourth exceptions, cited *Green* v. *Winter*, 1 Johns. Ch. R. 26 ; *Findley* ι. *Wilson*, 3 Littell, 393 ; 1 Madd. Ch. Pr. 91 ; *Downes* v *Grazebrook*, 3 Meriv. 206 ; *Rogers* v. *Rogers*,

1 Paige, 188 ; *Jennison* v. *Hapgood*, 10 Pick. 77 ; *Wormley* v. *Wormley*, 8 Wheat. 441 ; *Farnam* v. *Brooks*, 9 Pick. 224 and note ; *Davoue* v. *Fanning*, 2 Johns. Ch. R. 252 ; *Attorney General* v. *Clarendon*, 17 Vesey, 491 ; *De Caters* v. *De Chaumont*, 3 Paige, 178 ; *Church* v. *Marine Ins. Co.* 1 Mason, 345.

*Bliss* and *Dwight*, for the respondents, as to the sixth exception, cited 1 Co. Lit. 41 *b*, 53 *a*, 53 *b* ; 1 Cruise's Dig. 62 ; *Padelford* v. *Padelford*, 7 Pick. 152.

WILDE J. delivered the opinion of the Court.   This case comes before us on exceptions to the report of the master ; and two general questions raised by the exceptions and by the bill and answer, have been discussed by counsel and submitted to the consideration of the Court.   The first and principal question is, whether the plaintiff is entitled to the possession, use, and improvement of the real estate which she claims under the will of her father, and which was devised in trust for her to the defendant and another trustee since deceased. The second question is, whether the defendant's account, as allowed by the master, be correct.

The first question depends on the construction of the will of Gad Root, the plaintiff's father, by which certain real estates were devised in trust to the defendant, and the other trustee now deceased, the use and improvement of which was directed to be applied to the comfortable maintenance of his three children, the plaintiff and her two brothers, Asher and Theodore, so long as they should respectively live.   And then follows a clause in the will on which the plaintiff founds her claim for the possession and improvement of one third part of the devised premises.   This clause is in the words following : " And it is further my will, that so long as each of my children shall be industrious and economical, those so continuing shall have and be entitled to the use and improvement each of one third of the real estate so given in trust as aforesaid, and be entitled to all each shall respectively raise by virtue of their improvement of said property."   In reference to this clause, evidence was admitted by the master to prove, that, before the decease of the testator, and ever after, Grace, Asher, and Theodore were weak minded, with little

intellectual capacity, and incompetent and unskilful to manage, with ordinary prudence and discretion, the common concerns of life, and that this weakness had been of long standing ; but whether it was a natural infirmity, or was induced by long habits of intemperance, in which they had indulged themselves, did not appear.  To the admission of this evidence the plaintiff's counsel excepted ; and they contend that the plaintiff's capacity or want of capacity, and her intemperate habits, can have no effect on the construction of the above clause in the will ; that whatever her capacity and habits may have been, they were known to the testator, and as he has not made her right of possession to depend on her capacity, or habits of temperance or intemperance, the evidence of all such matters is irrelevant, and that the inquiry should be confined to her habits of industry and economy.

This, however, we think would be giving a too strict and literal construction to the will, which would defeat the object of the trust, and expose the property to waste.  The will is to be so construed as to effectuate the general intention of the testator.  The intention was to secure the property, not only against alienation, but against waste and injury by the *cestui que trusts*, and it cannot be supposed that it was intended that they should have possession of the property, if it would thereby be exposed to waste and dilapidation.

But if we were to adopt the most strict and literal construction of the will, we should still consider the evidence objected to material.  Incapacity and habits of intemperance are inconsistent with habits of industry and economy.  At least, the proof of the plaintiff's incapacity and habits of intemperance has a tendency to show, that no reliance can be placed upon her industry and economy.  We are therefore of opinion, that the evidence of the plaintiff's incapacity to manage with ordinary prudence and discretion the common concerns of life, and of her habits of intemperance, was rightly admitted by the master ; and taking into consideration the whole evidence reported, we are satisfied, that the claim of the plaintiff as to her possession and improvement of the real estate held by the defendant in trust, ought not to be allowed

In regard to the account for rents and profits, we think it correctly stated.

It is objected that no allowance should have been made for the improvements of the Hill lots ; but it is admitted, that the improvements were necessary and were judiciously made ; and it is clear, that the plaintiff is not entitled to the increased rents until the expenses are first refunded. Without the improvements the rents would be very trifling, and it was for the benefit of the plaintiff that the improvements were made.

It was also objected, that the defendant should have leased the property for the most it would bring, or should be allowed nothing for his expenditures and trouble ; but we know of no principle of equity, that will sustain this objection. A trustee cannot become a purchaser of the trust estate, but there is no reason why he should not occupy it, if he accounts for the rents, and to the amount the Court may consider reasonable.

In relation to the wood lot it is reported, that the old and decaying wood might have been selected and cut off, without any material injury to the lot. The trustee contends, that he was not authorized to cut any wood for the benefit of the plaintiff, except it was necessary to be used by her, or was necessary for her support. We do not however decide the point on this ground. For, admitting that the defendant might have safely cut down the decaying wood, yet as he acted in good faith, and might doubt his authority, and the proceeds of the sale of the wood would have been very trifling, we do not think he ought to be charged with a breach of trust in this respect. When a trustee acts according to his best judgment, he ought to be protected, although he may make some trifling mistakes in doubtful matters

*Exceptions overruled*